UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In Re:

SEARS HOLDINGS CORPORATION,

                                    Debtor.

------------------------------------------------------X

BRIAN COKE NG,

                              Appellant,

        v.

PDX, INC., et al.,

                              Appellees.
```

No. 20-CV-3712 (KMK)

OPINION & ORDER

<u>Appearances:</u>

Brian Coke Ng
New York, NY
*Pro Se Appellant*

Julie Anna Cvek, Esq.
Kirby Aisner & Curley LLP
Scarsdale, NY
*Counsel for Appellees*

KENNETH M. KARAS, District Judge:

        Brian Coke Ng ("Appellant") appeals from the April 9, 2020 Order of the Bankruptcy

Court (the "Order") for the Southern District of New York (the "Bankruptcy Court"), which

dismissed his Complaint against PDX, Inc. ("PDX") and National Health Information Network,

Inc. ("NHIN"; together with PDX, "Appellees").  (Order Granting Mot. of Appellees To Dismiss

Adversary Proceeding Compl. Pursuant to Fed. R. Bankr. P. 7012 ("Order") (Bankr. Dkt. No. 50).)[1]  For the reasons that follow, the Order is affirmed.

## I.  Background

The following facts are taken from Plaintiff's Complaint, (Compl. (Bankr. Dkt. No. 1)), and moving papers, (Appellants' Opening Br. ("Appellant's Mem.") (Dkt. No. 4); Appellants' Reply Br. and Mem. of Law ("Appellant's Reply") (Dkt. No. 7)).[2]  They are assumed to be true for purposes of adjudicating the instant appeal.

PDX sells pharmacy management software.  (Compl. ¶ 16.)  Appellees through a series of contracts provide pharmacy software, data, and reporting to Kmart, a subsidiary of the debtor in the bankruptcy action that underlies the instant adversarial proceeding.  (*Id*. ¶¶ 10, 16–17; *see also id*. Exs. 3, 4.)[3]  Appellant was a pharmacy customer of Kmart beginning as early as May 15, 2010.  (*Id.* ¶ 30.)  Appellant alleges that PDX's software is "defective" and has "created medical record documents with misleading, altered[,] and false information."  (*Id*. ¶ 4.)

Appellant points to two examples of such false information.  The first relates to altered drug information sheets.  In 2010 Appellant four times purchased the drug Sertraline HC and one time purchased the drug Bupropn HCL from a Kmart pharmacy.  (*Id.* ¶ 31.)  Appellant received a medical information sheet for each of those drugs.  (*Id.* ¶ 32.)  This information sheet consisted

---

[1] The Court uses "Bankr. Dkt." to refer to filings on the adversary Bankruptcy Court docket, *Ng v. Sears Holding Corporation, et al.*, Dkt. No. 19-8269 (Bankr. S.D.N.Y.).

[2] "[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider [P]laintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (italics omitted) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir.1987)).

[3] While Appellant's Complaint named Kmart in addition to Appellees, (*see* Compl.), only the Order dismissing his claims against Appellees is before the Court.

of two brief paragraphs, and warned of the risks associated with these two drugs, including mixing them with alcohol, driving or operating machinery after use, and using them while pregnant or breast feeding.  (*Id.*)  In August 2018, Appellant purchased the same drugs from Kmart.  (*Id.* ¶¶ 42–43.)  This time, he received different information sheets.  (*Id.*)  These information sheets "conflict[ed] [with] the previous" information sheets, "show[ed] alterations, modifications[,] and falsifications," and contained "great length and detail[]."  (*Id.*)  These information sheets were significantly longer and listed significantly more risks than those provided to Appellant in 2010.  (*Id.*)  These altered information sheets caused Appellant "a sense of malaise, disquiet, dissatisfaction, unrest, low mood, uneasiness, fear[], fatigue, [inability] to sleep, [loss of appetite,] and . . . worry[] about the pressing medical information sheets/printouts."  (*Id.* ¶ 47.)  They also caused "heavy stress with accompanying headaches."  (*Id.* ¶ 48.)

The second inaccuracy relates to Appellant's medical records.  In November 2018, Appellant received three medical records.  (*Id.* ¶ 58.)  These records suggested that Appellant was affiliated with three separate health insurance plans: Retain Maintenance Program, Please Use HTR-GoodRx, and RXE-American Healthcare Ntwk.  (*Id.*)  In fact, Appellant during this period had used only Medicaid.  (*Id.* ¶¶ 60, 62, 65.)  He at no point consented to enroll in any of these other plans.  (*Id.*)  The medical records also suggested that Appellant paid $15.40 for each of these three transactions.  (*Id.* ¶ 58.)  At no point did Appellant spend this sum.  (*Id.* ¶¶ 60, 62, 65.)  These "fraudulent documents" caused Appellant "to suffer disabling [d]epression[] and stress" and required that he receive "emergency/urgent care for [v]omitting, [n]ausea,

[d]epression, [a]nxiety[,] and [s]tress." (*Id.* ¶¶ 66–67.) In addition, Appellant's pre-existing bronchial asthma worsened. (*Id.* ¶¶ 68–69; *see id.* Ex. 7.)[4]

Appellant separately alleges that these inaccuracies in his medical records prevent him from "in good faith submit[ting] a claim to the workers' compensation insurance carrier," as "that would be aiding and abetting the fraud." (*Id.* ¶ 99.) In order to submit such a claim, Plaintiff needs "genuine, reliable[,] and accurate medical records." (*Id.* ¶ 96.) Appellant does not allege that any such request has been reviewed and turned down. (*See generally id.*)

Appellant filed his Complaint on June 17, 2019. (*Id.*) The Complaint alleged three causes of action against Appellees: (1) intentional infliction of emotional distress, (*id.* ¶¶ 83–94); (2) product liability, (*id.* ¶¶ 115–17); and (3) negligence, (*id.* ¶¶ 118–22). On July 17, 2019, Appellees filed a Motion To Dismiss the Complaint on Federal Rules of Civil Procedure 12(b)(2) grounds for lack of personal jurisdiction. (Bankr. Dkt. Nos. 5, 6.) On December 2, 2019, the Bankruptcy Court after two hearings denied Appellees' Motion without prejudice. (Bankr. Dkt. No. 31.) On January 13, 2020, the Clerk of the Court entered a default against Appellees due to their failure to plead. (Bankr. Dkt. Nos. 39, 40.) *See* Fed. R. Bankr. P. 7012(a) ("[I]f the court denies [a] motion . . . , [a] responsive pleading must be served within 14 days after notice of the court's action."); Fed. R. Civ. P. 12(a) (same). Appellant did not subsequently move for a default judgment, (*see* Transcript ("Hearing") 7 (Bankr. Dkt. No. 65)), and on January 16, 2020, Appellees submitted a second Motion To Dismiss, this time on Rule 12(b)(6) grounds. (Bankr. Dkt. No. 43.)

---

[4] The Complaint alleges that Kmart lied about complying with a subpoena issued by the New York Supreme Court, (Compl. ¶¶ 49–52), and that this caused Appellant "more [p]hysical sickness overtime and worsening symptoms," (*id.* ¶ 53; *see also id.* ¶¶ 54–55 (describing other symptoms)). Appellees were not subject to this subpoena, (*see id.* Ex. 2), and Appellant does not mention this issue in his submission, (*see* Appellant's Mem.; Appellant's Reply).

The Bankruptcy Court held a telephonic hearing on April 9, 2020.  (Hearing.)  Appellant requested on April 8, 2020 that the hearing be cancelled, but it was not.  (Appellant's Reply 4; *see also* Appellant's Mem. 33.)  Appellees' counsel advised Plaintiff to call into the hearing and created a dial-in account for him.  (*See* Appellant's Mem. 34; Appellant's Reply 4, 8–9.)  However, Appellant's phone was muted during the hearing, and he was unable to speak.  (Appellant's Mem. 34.)  After the hearing, Appellees' counsel sent an email to the company that coordinated the dial-in, which stated in part that "[o]ur firm is no longer providing legal help to [Appellant]."  (Appellant's Reply 4.)

The Bankruptcy Court at the hearing granted Appellees relief from the Clerk's entry of default against them, (Hearing 10), and granted Appellees' Motion To Dismiss through a bench ruling, (*id.* at 22).  The Bankruptcy Court entered the Order the same day.  (Order.)

Appellant moved for reconsideration, arguing in large part that Appellees had sabotaged the hearing by muting and refusing to un-mute Appellant's phone.  (*See* Bankr. Dkt. Nos. 51, 52.)  After a hearing at which Appellant appeared, (Bankr. Dkt. Nos. 54, 57), the Bankruptcy Court on April 23, 2020 denied Appellant's application, (Bankr. Dkt. No. 57).  On April 30, 2020, Appellant moved for reconsideration a second time, arguing in part that Appellees' counsel was improperly conflicted because she had simultaneously represented him and Appellees.  (Bankr. Dkt. No. 59.)  The Bankruptcy Court again denied his application.  (Bankr. Dkt. No. 60.)

Appellant's appeal pursuant to 28 U.S.C. § 158(a) was filed in this Court on May 13, 2020.  (*See* Pl.'s Not. of Appeal from Order (Dkt. No. 1); Appellants' Suppl./Am. Statement of Issues Presented on Appeal and Suppl./Am. Designation of R. on Appeal ("Statement of Issues") (Dkt. No. 3).)  On May 15, 2020, Appellant filed his opening brief.  (Appellant's Mem.)  On

June 15, 2020, Appellee's opposed.  (Appellee's Mem. of Law ("Appellees' Mem.") (Dkt. No.
6).)  On June 30, 2020, Appellant replied.  (Appellant's Reply.)

## II.  Discussion

Appellant makes three arguments.  First, Appellant argues that the Bankruptcy Court
erred in granting Appellees relief from the Clerk's entry of default.  (Appellant's Mem. 31–33;
Appellant's Reply 1–4; *see* Statement of Issues at C.)  Second, Appellant argues that the
Bankruptcy Court erred in granting Appellee's Motion To Dismiss.  (Appellant's Mem. 1–31,
36–39; Appellant's Reply 5–8; *see* Statement of Issues at A, B, D.)  Third, Appellant seeks relief
from the Order on the basis that Appellees' counsel had a conflict of interest because she assisted
Appellant with the April 9, 2020 hearing.  (Appellant's Mem. 33–36; Appellant's Reply 4, 8–9;
*see* Statement of Issues at E.)  The Court discusses each argument in this order.

### A. Default

Appellant argues that the Bankruptcy Court erred in granting Appellees relief from the
Clerk's entry of default.  (Appellant's Mem. 31–33; Appellant's Reply 1–4; *see* Statement of
Issues at C.)  "Decisions by the bankruptcy court granting or denying a motion to reopen a
default are not disturbed, absent an abuse of discretion."  *State Bank of India v. Chalasani (In re
Chalasani)*, 92 F.3d 1300, 1307 (2d Cir. 1996).  "The court may set aside an entry of default for
good cause."  Fed. R. Civ. P. 55(c); *see also* Fed. R. Bankr. P. 7055.  "Under Rule 55(c), the
principal factors bearing on the appropriateness of relieving a party of a default are whether the
default was willful, whether setting it aside would prejudice the adversary, and whether a
meritorious defense is presented."  *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).
"Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be
resolved in favor of a trial on the merits."  *Id.*  The Bankruptcy Court correctly stated the test

from *Meehan*.  (Hearing 9.)  It found that Appellees presented a meritorious defense, based on a review of their Motion To Dismiss.  (*Id*.)  It also found that there was no prejudice to Appellant, because he was able to address the merits of the Motion To Dismiss and had not moved for a default judgment after the entry of default.  (*Id*.)  Appellant argues that the Bankruptcy Court did not provide him an adequate opportunity to move for a default judgment, given his medical circumstances.  (Appellant's Reply 1–2.)  But because "[d]efaults are not favored," *Meehan*, 652 F.2d at 277, the Bankruptcy Court did not err in declining to accommodate this request, particularly because Appellant was able to address the merits, (*see* Bankr. Dkt. No. 44).  Appellant also argues that Appellees failed to consolidate their Rule 12(b)(2) and Rule 12(b)(6) motions.  (Appellant's Mem. 31–32; Appellant's Reply 4.)  But the Bankruptcy Court granted Appellees leave to file a second motion to dismiss, (*see* Hearing 7), which is within its "inherent power[]," *see Casse v. Key Bank Nat'l Assoc. (In re Casse)*, 198 F.3d 327, 336 (2d Cir. 1999) (citing 11 U.S.C. § 105).  The same is true of the Bankruptcy Court's decision not to postpone the April 9, 2020 hearing, (*see* Appellant's Mem. 33), particularly given its decision to hold a second hearing on Appellant's Motion For Reconsideration, (*see* Bankr. Dkt. No. 54), at which Appellant appeared, (*see* Bankr. Dkt. No. 57), *see United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000) (noting "the court's power to manage its calendar").  Because the Bankruptcy Court's "decision was not only not 'clearly wrong,' but in fact quite right," *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1152 n.11 (2d Cir. 1995) (citation omitted), the Order is affirmed insofar as it granted Appellees relief from the Clerk's entry of default.

B.  Motion To Dismiss

Appellant argues that the Bankruptcy Court erred in granting Appellee's Motion To Dismiss.  (Appellant's Mem. 1–31, 36–39; Appellant's Reply 5–8; *see* Statement of Issues at A,

B, D.)  "A bankruptcy court's dismissal of a complaint for failure to state a claim is reviewed de

novo."  *Great Am. Ins. Co. v. Bally Total Fitness Holding Corp. (In re Bally Total Fitness of*

*Greater N.Y., Inc.)*, No. 09-CV-4052, 2009 WL 1684022, at *1 (S.D.N.Y. June 15, 2009) (citing

*Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d

Cir. 2000)).  The Supreme Court has held that although a complaint "does not need detailed

factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of

Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement."  *Id.* (citation, alteration and

quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her]

claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see*

*also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in

original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL

5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff

"submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed.*

*Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "his

opposition memorandum," *Gadson*, 1997 WL 714878, at *1 n.2, and "documents either in [the]

plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing

suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

  Appellant claims intentional infliction of emotional distress.  (Compl. ¶¶ 83–94.)  Under

New York law, an intentional infliction of emotional distress claim "has four elements: (i)

extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of

causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and

(iv) severe emotional distress."  *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).

Appellees argue that the Complaint does not allege extreme and outrageous conduct.

(Appellees' Mem. 13–14.)  New York courts have been extremely reluctant to find extreme and

outrageous conduct.  *See Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983);

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) ("[Intentional infliction of

emotional distress] . . . remains a highly disfavored tort under New York law." (citation,

alteration, and quotation marks omitted)).  Conduct qualifies as "extreme and outrageous" only if

it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Murphy*, 448 N.E.2d at 90 (citation omitted).  "The element of outrageous conduct is 'rigorous,

and difficult to satisfy,' and its purpose is to filter out trivial complaints and assure that the claim

of severe emotional distress is genuine."  *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y.

2013) (quoting *Howell*, 612 N.E.2d at 702).  Here, Appellees' alleged conduct clearly does not

rise to this level.  Inaccurately disclosing medical risks, (Compl. ¶¶ 42–43), and providing

medical records that list the wrong health insurance plan and payment amounts, (*id*. ¶¶ 58–65),

are not "extreme and outrageous conduct," *see Luethke v. Seagram Co*., No. 00-CV-7946, 2000

WL 1880324, at *2 (S.D.N.Y. Dec. 28, 2000) ("[D]issemination of lies . . . do[es] not, as a

matter of law, constitute the 'extreme and outrageous conduct' required to state a claim for

intentional infliction of emotional distress under New York law." (some quotation marks

omitted)); *Fletcher v. Insignia/Douglas Elliman*, 768 N.Y.S.2d 197, 198 (App. Div. 2003)

("[L]ying to [the] plaintiff and turning her against her family [] is insufficiently extreme and

outrageous as to support [an IIED] claim."); *cf. Turley*, 774 F.3d at 161 ("General bureaucratic

unresponsiveness . . . is rarely if ever considered so beyond the pale as to reach the extreme

threshold necessary for an IIED claim.").  Thus, Appellant's claim of intentional infliction of

emotional distress was properly dismissed.

Appellant claims products liability.  (*See* Compl. ¶¶ 115–17.)  "In order to make out a

prima facie case [of products liability], the plaintiff must show [1] that the product at issue was

defective, and [2] that the defectively designed product was the actual and proximate cause of the

plaintiff's injury."  *Hilaire v. DeWalt Indus. Tool Co*., 54 F. Supp. 3d 223, 252 (E.D.N.Y. 2014)

(citing *Voss v. Black & Decker Mfg. Co*., 450 N.E.2d 204, 208–09 (N.Y. 1983)).  Appellees

argue that Appellant does not allege a defective product.  (Appellees' Mem. 15.)  The "three

types of defects recognized under New York law [are] (1) design defects; (2) manufacturing

defects; and (3) defective or inadequate warnings."  *Hilaire*, 54 F. Supp. 3d at 252 (citing *Voss*,

450 N.E.2d at 207).  Appellant alleges a design defect.  (*See* Compl. ¶ 115–16 (alleging that

Appellees' product is "defective in design" and that "defects in design" caused Appellant's

alleged injuries).)  To establish a design defect, the plaintiff must allege "(1) that the product, as

designed, posed a substantial likelihood of harm; (2) that it was feasible for the manufacturer to

design the product in a safer manner; and (3) that the defective design was a substantial factor in

causing plaintiff's injury." *Am. Guarantee & Liab. Ins. Co. v. Cirrus Design Corp.*, No. 09-CV-

8357, 2010 WL 5480775, at *3 (S.D.N.Y. Dec. 30, 2010).  The Court agrees with the

Bankruptcy Court that the Complaint alleges a design defect only "in a conclusory way."

(Hearing 20.)  The Complaint alleges that Appellees' product "automatically omitted . . . various

information such as warnings," then "automatically performed or permitted various alterations

and falsifications of [Appellant's] medical records."  (Compl. ¶ 115.)  Appellant summarizes that

Appellees' product is "defective in design and cannot process and/or retrieve [Appellant's]

electronic medical records."  (*Id*.)  These claims "fail[] to allege with sufficient specificity how

the design of [Appellees' product] was defective."  *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500,

510 (S.D.N.Y. 2018) (emphasis omitted); *see also Am. Guarantee*, 2010 WL 5480775, at *3

("Plaintiffs do not offer sufficiently detailed facts that would allow a reasonable person to

conclude that the product should not have been marketed in its present form.").  Indeed, "the

mere fact that the device did not perform as intended is not by itself indicative of a flaw in

the . . . design."  *Bertini v. Smith & Nephew, Inc.*, No. 13-CV-79, 2013 WL 6332684, at *3

(E.D.N.Y. July 15, 2013).  Thus, because Appellant did "not identify any particular problem in

the design of the product," *Goldin v. Smith & Nephew, Inc.*, No. 12-CV-9217, 2013 WL

1759575, at *4 (S.D.N.Y. Apr. 24, 2013), his product liability claim was properly dismissed.[5]

     Appellant claims negligence.  (*See* Compl. ¶¶ 118–22.)  "To prevail on a negligence

claim, a plaintiff must establish the existence of a legal duty, a breach of that duty, proximate

---

[5] The Court separately agrees with Appellees' argument that Appellant does not
adequately allege causation, (*See* Appellees' Mem. 14), which will be discussed *infra*.

causation, and damages." *Luina v. Katharine Gibbs Sch. N.Y., Inc.*, 830 N.Y.S.2d 263, 264

(App. Div. 2007).  Appellees argue that the Complaint does not allege that a breach of its duty

proximately caused Appellant's injuries.  (Appellees' Mem. 15–16.)  The Complaint alleges that

Appellees have a duty to safeguard the privacy and security of Appellant's protected health

information pursuant to the Health Insurance Portability and Accountability Act (HIPAA).

(Compl. ¶¶ 19–21; *see also* Appellant's Mem. 23–31.)[6]  Where a duty arises based on a statute, a

plaintiff "cannot establish liability if the statute is intended to protect against a particular hazard,

and a hazard of a different kind is the occasion of the injury."  *Rocovich v. Consol. Edison Co.*,

583 N.E.2d 932, 934 (N.Y. 1991) (citation and quotation marks omitted); *see also Young-Gibson*

*v. Patel*, 957 F. Supp. 2d 269, 271, 275–76 (W.D.N.Y. 2013) (granting judgment on the

pleadings where the alleged harm—inability to receive communications that were necessary to

locate a prescription—was "not part of the class of foreseeable hazards that an innkeeper's

failure to answer the telephone could be said to create").  "HIPAA was enacted by Congress in

order to protect against unwarranted disclosure of health records and information."  *Gabriele v.*

*Maimonides Hosp.*, No. 10-CV-3200, 2010 WL 3035486, at *1 (E.D.N.Y. Aug. 2, 2010) (citing

*Gratton v. United Parcel Serv., Inc.*, No. 07-CV-3071, 2008 WL 4934056, at *4 (E.D.N.Y. Nov.

14, 2008)).  Here, Plaintiff alleges injuries as a result of seeing inaccurate warnings and

inaccurate copies of his own medical records, which caused mental and physical symptoms, (*see*

Compl. ¶¶ 47–48, 66–69), and caused Plaintiff to choose not to submit claims for workers'

compensation, (*see* Compl. ¶¶ 96, 99).  These injuries "are not the harms typically associated

with" the hazards of unwarranted disclosure of health records and information.  *Ryan v.*

---

[6] While Appellant alleges a duty of care more broadly elsewhere in the Complaint, (*see, e.g.*, Compl. ¶ 7), the Court agrees with the Bankruptcy Court that these general allegations are "conclusory," (*see* Hearing 21).

*Freidman Decorating Co.*, No. 01-CV-385, 2005 WL 1802861, at \*14 (S.D.N.Y. July 28, 2005). Nor are they "part of the class of foreseeable risks" of failing to safeguard protected health information. *Young-Gibson*, 957 F. Supp. 2d at 275. Thus, Appellant's negligence claim was properly dismissed.

Appellant cites *Hardin v. PDX, Inc.*, 173 Cal. Rptr. 3d 397 (Ct. App. 2014), *as modified on denial of reh'g* (July 21, 2014), and argues that it is "similar to [his] product liability claims against [A]ppellees."  (*See* Appellant's Reply 8.)  In *Hardin*, the plaintiff suffered severe and painful scarring after taking the drug lamotrigine.  *Hardin*, 173 Cal. Rptr. 3d at 400.  PDX provided the plaintiff's pharmacy with a five-section monograph to accompany lamotrigine, rather than the eight-section monographs that complied with regulatory guidelines.  *Id.* at 401. This shorter monograph omitted a warning that lamotrigine could cause rashes and scarring.  *Id*. Plaintiff alleged that, were she provided the eight-section warning, she would not have taken lamotrigine.  *Id*.  This case is distinguishable from Appellant's in at least two important respects. First, the plaintiff in *Hardin* explained specifically why the product was defective: because it did not include a warning about rashes.  *Id*.  As discussed, Appellant has not alleged a specific defect.  Second, the plaintiff in *Hardin* suffered a harm—severe and painful scarring—that was among the types of harms that would foreseeably result from inadequate warnings about the risk of rashes.  *Id*. at 400.  As discussed, Appellant has not alleged a type of harm that would foreseeably result from Appellees violating duties allegedly created by HIPAA.

Thus, the Bankruptcy Court's Order is affirmed insofar as it dismissed the Complaint for failure to state a claim.

C.  Conflict of Interest

Appellant argues that the Bankruptcy Court erred in overlooking Appellees' counsel's conflict of interest due to her assisting Appellant with the April 9, 2020 hearing.  (Appellant's Mem. 33–36; Appellant's Reply 4, 8–9; *see* Statement of Issues at E.)  Attorney disqualification decisions are reviewed for abuse of discretion.  *See United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004).  "[I]t is 'prima facie improper' for an attorney to simultaneously represent a client and another party with interests directly adverse to that client."  *Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) (citation omitted).  "In such instances, the 'per se' standard applies and the attorney must be disqualified unless he can demonstrate 'at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.'"  *Merck Eprova AG v. ProThera, Inc*., 670 F. Supp. 2d 201, 208 (S.D.N.Y. 2009) (emphasis and some quotation marks omitted) (quoting *Hempstead Video*, 409 F.3d at 133).  "The formation of an attorney-client relationship hinges upon the client's reasonable belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice."  *Knigge ex rel. Corvese v. Corvese*, No. 01-CV-5743, 2001 WL 830669, at *3 (S.D.N.Y. July 23, 2001) (citation, alternations, and quotation marks omitted).  In determining whether such an attorney-client relationship exists, courts consider the following factors:

> 1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in an aspect of the matter (e.g., at a deposition); 5) whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; 6) whether the purported client believed that the attorney was representing him and whether this belief was reasonable.

*Catizone v. Wolff*, 71 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). Here, Appellant's briefing suggests that none of these factors existed. He claims that Appellees' counsel helped him dial into court conferences, (*see* Appellant's Mem. 34; Appellant's Reply 4, 8–9), and that Appellees' counsel subsequently sent an email stating "[o]ur firm is no longer providing legal help to [Appellant]," (Appellant's Reply 4). Appellant does not suggest that Appellees' counsel provided anything other than technical support and guidance, which is distinct from legal assistance. *See Diversified Grp., Inc. v. Daugerdas*, 139 F. Supp. 2d 445, 454 (S.D.N.Y. 2001) (noting that it is "well settled that the requisite attorney-client relationship is not established when the client seeks business or personal advice, as opposed to legal assistance" (citation omitted)). Nor does Appellant claim that he believed that Appellees' counsel represented him. (*See generally* Appellant's Mem.; Appellant's Reply.) Indeed, Appellant implies the opposite, stating that he "did not [give] [Appellees'] counsel any informed consent, or permission to provide [Appellant] with any 'legal help.'" (Appellant's Mem. 34.) Thus, Appellant's request for relief from the Order due to a claimed attorney conflict is denied.[7]

### III. Conclusion

For the reasons given herein, the Order of the Bankruptcy Court is affirmed. The Clerk of the Court is respectfully requested to close this case and mail a copy of this Opinion & Order to Appellant.

SO ORDERED.

DATED:      March 30, 2021
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[7] Because Appellant has not alleged a conflict of interest, the Court takes no position on whether such a conflict would be a valid basis to provide relief from the Order.